# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL A. HUMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 2:14CV00073 ERW |
| J. HURLEY, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Daniel A. Human (registration no.529436), an inmate at Northeast Correctional Center ("NECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $23.80 at this time. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $119.00, and an average monthly balance of $53.79. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $23.80, which is which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of

a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 51-52.

**The Complaint**

Plaintiff, an inmate at NECC, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants are: J. Hurley (Warden, NECC); T. Chenoweth (Correctional Officer); D. Womples (Sergeant); S. Kattelman (Sergeant); T. Truelove (Major); S. Burgett (Correctional Officer); R. Speagle (Caseworker); and T. Wood (Functional Unit Manager). All defendants are sued in both their individual and official capacities.

Plaintiff asserts that he arrived at NECC on November 11, 2013 and had been previously diagnosed with sciatica and a left inguinal hernia years prior, "among other physical impairments." He had been prescribed 800 mg TID of ibuprofen as treatment for his medical issues prior to being transferred to NECC. Plaintiff asserts that on March 13, 2014, he was assigned to the "Capt's Crew," a work crew that involved various physical labors at the prison, including bending and stooping. He asserts that he was assigned to the crew by defendant Speagle, who knew about his serious medical issues, yet assigned him to the job nevertheless. Plaintiff asserts that as soon as he realized the amount of physical labor required on the job, he

went to his supervisor, defendant Chenoweth and specifically explained his medical conditions, along with defendant Womples (Chenoweth's supervisor), and they both agreed to allow him to be placed on temporary lay-in until he received a medical lay-in from the medical staff at NECC. He received a medical lay-in restricting him from any "repetitive bending, stooping or squatting" within seven days of that time.

Plaintiff states that during the first three weeks of the medical lay-in, defendants Womples and Chenoweth observed the medical lay-in and did not require him to work on the Capt's Crew. However, on April 25, 2014, he was told by Chenoweth to "go to work," despite the restrictions on his medical lay-in. Plaintiff states he appealed the decision to Wombles, who also told him to "go to work," despite the restrictions, and he was told that he would receive a conduct disorder if he disobeyed. When he pressed the matter further with Wombles after reporting the issue to another correctional officer (CO McKinnon) and attempting to report the issue to a shift commander, he states that he was taken to a "secluded area" and told by Wombles that he could work or be locked up and receive a conduct violation. Plaintiff claims that he was also specifically told by Wombles that "if he asked for a shift commander again he would be locked up." Plaintiff, who has been incarcerated for going on twenty years, states that he understood that to mean that Wombles was threatening to place him in administrative segregation (solitary) if he complained and that he would have his visiting privileges and possibility of parole affected. Plaintiff asserts that he believed Wombles was threatening him in retaliation for reporting his unlawful behavior.

Plaintiff states that despite Wombles' threats, he wrote letters complaining about the situation to defendants Truelove and Warden Hurley. He also informed these defendants about the threats and the refusal of Wombles to allow him to talk with a shift commander. Plaintiff states that despite his letters, neither Truelove or Hurley intervened in the matter.

Plaintiff claims that his medical condition continued to deteriorate as a result of the working conditions. He asserts that he went back to medical and was given a more restrictive lay-in, as well as a cane for ambulating, but that Chenoweth and Wombles still required him to work on the Capt's Crew. Plaintiff states that defendants Hurley, Kattelman, Burgett and Wood knew about his restrictions and saw him struggling to work with the cane, but still refused to intervene and take him off the work crew, despite his requests for them to do so. Plaintiff states that defendants continued to require him to work for several weeks, in spite of his medical restrictions and his obvious medical problems, until his caseworker (Watson) persisted and had him removed from the work detail.

Plaintiff seeks monetary damages and injunctive relief.

**Discussion**

Plaintiff has alleged sufficient facts against defendants, in their individual capacities, to state a claim for deliberate indifference to his serious medical needs in violation of the 8th Amendment. He has claimed that defendants Hurley, Chenoweth, Womples, Kattelman, Truelove, Burgett, Speagle and Wood knew about his medical restrictions and his serious medical needs but assigned him to work on the Capt's Crew and kept him working, interfering with the medical restrictions and causing him pain and suffering. These allegations state a claim for deliberate indifference against defendants.

Plaintiff has also alleged a First Amendment retaliation claim against defendant Womples. He asserts that defendant Womples retaliated against him for attempting to contact the shift commander to report Womples' unlawful behavior and threatened him with adverse consequences if he further pursued engaging in protected activity.

However, the Court will dismiss plaintiff's claims against defendants in their official capacities. Naming a government official in his or her official capacity is the equivalent of

naming the government entity that employs the official, in this case the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, plaintiff's claims brought against defendants in their official capacities fail to state a claim upon which relief can be granted and they will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $23.80 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants J. Hurley, T. Chenoweth, D. Womples, S. Kattelman, T. Truelove, S. Burgett, R. Speagle, and T. Wood in their individual capacities. As these individuals are employees of the Missouri Department of Corrections, they can be served according to the Court's waiver agreement with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants J. Hurley, T. Chenoweth, D. Womples, S. Kattelman, T. Truelove, S. Burgett, R. Speagle, and T.

Wood shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants in their official capacities because plaintiff's claims against defendants in their official capacities fail to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

So Ordered this 9th day of October, 2014.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE