UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DANIEL HUMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:14CV00073 ERW |
| ) | |
| J. HURLEY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Ronald Crum's Motion to Dismiss [ECF No. 49].

### I. BACKGROUND

Plaintiff Daniel Human ("Plaintiff") initiated this lawsuit by filing a complaint on July 3, 2014 [ECF No. 1]. On March 12, 2015, Pro Bono Counsel was appointed [ECF No. 27]. On May 1, 2015, Plaintiff filed an amended complaint [ECF No. 33]. On May 27, 2015, Defendants James Hurley ("Hurley"), Terri Chenoweth ("Chenoweth"), Daniel Wombles ("Wombles"), Susan Kattleman ("Kattleman"), Timothy Truelove ("Truelove"), Stephen Burgett ("Burgett"), Roxane Speagle ("Speagle"), and Timothy Wood ("Wood") filed a Motion to Dismiss [ECF No. 36] for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), seeking to dismiss all claims stated in Plaintiff's Amended Complaint. The Court granted, in part, the Motion to Dismiss [ECF No. 51]. Defendant Ronald Crum ("Crum") filed his pending Motion to Dismiss [ECF No. 49] on August 31, 2015. For purposes of this motion to dismiss, the Court accepts as true the following facts alleged in Plaintiff's Complaint. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615

F.3d 958, 988 (8th Cir. 2010).

Plaintiff has been an inmate at Northeast Correctional Center ("NECC") in Bowling Green, Missouri, since November 12, 2013 [ECF No. 33]. Prior to arriving at NECC, Plaintiff had a reported medical diagnosis of sciatica[1] and a left inguinal hernia. At prior facilities, he had been assigned to desk work and other clerical positions. In March 13, 2014, after Plaintiff had been transferred to NECC, he was assigned to the "Captain's Crew" ("Crew") which worked outdoors, performing physical labor. Plaintiff informed Chenoweth, the correctional officer in charge of the Crew, and Wombles, a sergeant at NECC and Chenoweth's supervisor, of his medical conditions limiting him from performing physical work.

On April 11, 2014, Deborah Harrell, APRN FNP-C, examined Plaintiff and issued work restrictions stating Plaintiff was restricted from "repetitive bending, stooping, or squatting" for work assignments. Plaintiff informed Chenoweth and Wombles of his restrictions. Plaintiff was informed he would be required to check in with the Crew in the mornings but would return to his housing unit. From April 14, 2014, until April 25, 2014, this procedure was followed. On April 26, 2014, Plaintiff was instructed by Chenoweth to report to active duty on the Crew. Wombles reiterated Chenoweth's instruction to report to active duty. Plaintiff's duties throughout the morning caused him great pain. Plaintiff attempted to again notify Chenoweth and Wombles of his work restrictions. Wombles told Plaintiff he could either work the Crew as ordered or refuse and be cuffed, written up, placed in solitary confinement, and lose visitor's privileges. Wombles also told Plaintiff if he asked for the shift commander, he would be locked up for doing so.

Plaintiff wrote to Truelove, NECC's Chief of Security, and Hurley, Warden of NECC, advising them of what happened and asking to be reassigned to work within his restrictions.

---

[1] Sciatica is pain that radiates along the path of the sciatic nerve, causing pain in the lower back, hips, and buttocks.

Truelove and Hurley did not respond. Plaintiff asked Speagle, his caseworker, for an emergency Informal Resolution Request ("IRR") asking for a reassignment of work duties, but Speagle refused.

On April 29, 2014, the medical unit at NECC added new medical restrictions. Plaintiff's total restrictions were "no repetitive bending, stopping and squatting," "no prolonged standing x 20 minutes," and required use of a cane as his "assistive device."[2] Plaintiff notified Chenoweth and Wombles of the new restrictions, but Plaintiff was forced to continue working in the Crew. Hurley witnessed Plaintiff's labor and instructed Chenoweth and others to ignore the restrictions and to continue requiring Plaintiff to work on the Crew.

On May 25, 2014, Plaintiff notified Burgett, a correctional officer who supervises inmates working in the A-Side yard where Plaintiff worked, of his restrictions and that his work assignments violated those restrictions. On June 6, 2014, Plaintiff informed Kattelman, another correctional officer who supervises inmates working in the A-Side yard, of the same. Both Burgett and Kattelman acknowledged the violations but refused to reassign him or report the violation to a superior. Wood, the functional unit manager in charge of Plaintiff's housing unit, learned of the violation of Plaintiff's restrictions but refused to reassign him or report it to a supervisor.

On June 10, 2014, Plaintiff submitted a written request to his caseworker requesting a form to file a grievance and did not receive a response. Plaintiff filed an IRR on April 30, 2014, but did not receive a response within forty days as required. On June 17, 2014, Plaintiff again requested a form to file a grievance from his caseworker and again did not receive a response.

---

[2] The petition states these restrictions were added on April 29. However, the documents attached to the petition illustrate the restriction for "no prolonged standing more X 20 minutes" was given on May 29.

On July 22, 2014, Plaintiff received a response from the Warden's office denying his grievance.[3] Plaintiff appealed the denial on July 31, 2014, and it was denied on August 29, 2014.

At a later date, Plaintiff requested a room change, which is standard for inmates in good standing. On December 4, 2014, Wood moved Plaintiff to a cell containing two smokers, even though Wood knew Plaintiff was allergic to smoke. Plaintiff filed a grievance regarding this but it was denied, along with his appeal. On February 10, 2015, Crum, a sergeant currently in charge of Plaintiff's housing unit, assigned Plaintiff to clean showers which required Plaintiff to climb stairs. Plaintiff filed a grievance stating this violates his medical work restrictions but it was denied. After this denial, Plaintiff wrote a letter to this Court. Hurley responded denying the work assignment was in violation of Plaintiff's restrictions. Plaintiff is still performing physical labor and living with cellmates who smoke.

Plaintiff asserts two counts against Defendants, including Crum. In Count I, Plaintiff asserts Defendants deprived Plaintiff of his constitutional rights to be secure in his person and free from the imposition of cruel and unusual punishment. In Count II, Plaintiff asserts Defendants deprived Plaintiff of his constitutional right to adequate medical treatment for known risks to his health. Defendants now seek to dismiss Plaintiff's claims.

## II. STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim

---

[3] It is unclear from the complaint when Plaintiff actually filed his grievance or how he was able to obtain the form to do so after his caseworker did not supply him a form.

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

## III. DISCUSSION

Defendant Crum asserts two grounds for dismissal. First, Crum argues Plaintiff has failed to state a claim that he acted with deliberate indifference in the work assignment context pursuant to FRCP 12(b)(6). Second, Crum contends he is entitled to qualified immunity. Each argument will be addressed *infra*.

### a. *Eighth Amendment and Deliberate Indifference*

A claim brought by a prisoner concerning prison working conditions is properly analyzed under the Eighth Amendment. *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir. 1996). To succeed on such a claim, Plaintiff must prove the conditions challenged were "objectively, sufficiently serious" and the prison official acted with a "sufficiently culpable state of mind." *Id*. The state of mind a plaintiff must establish is "deliberate indifference to inmate health or safety." *Id*. A prison official acts with deliberate indifference when he knowingly compels a prisoner to

perform physical labor beyond the prisoner's strength, which constitutes a danger to their health, or which is unduly painful. *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993). This state of mind is "highly culpable" and more than an ordinary lack of due care. *Id.*; *see also Stephens*, 83 F.3d at 201.

A prison official's deliberate indifference towards a prisoner's serious medical needs also violates the Eighth Amendment. *Meloy v. Bachmeier*, 302 F.3d 845, 848-49 (8th Cir. 2002). To establish deliberate indifference, a prisoner must show he has objectively serious medical needs and the official actually knew of those needs but deliberately disregarded them. *Id.* This may be manifested by a prison official denying or delaying access to medical care. *Id.* A serious medical need is one so obvious even a layperson could easily recognize the necessity for a doctor's attention. *Bice v. Jordan*, No. 1:10-CV-21(CEJ), 2011 WL 1226898 at *3 (E.D.Mo. Mar. 30, 2011) (citing *Vaughan v. Greene County, Ark.*, 438 F.3d 845, 851 (8th Cir. 2006)).

Plaintiff has failed to sufficiently plead Crum was deliberately indifferent to Plaintiff's health or safety. The entirety of Plaintiff's complaint includes one allegation of Crum which is contained in Paragraph 35: "On February 10, 2015, Defendant Crum assigned Plaintiff to clean showers, a job that required Plaintiff to climb stairs and exceed his work restrictions." Exhibit 10 to Plaintiff's Complaint indicates Crum attempted to accommodate Plaintiff's restrictions while only requiring him to clean showers for 19 minutes and in areas he could reach. This is not sufficient to allege a claim against Crum. This single allegation does not establish deliberate indifference.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ronald Crum's Motion to Dismiss [ECF No. 49] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Daniel Human's claims against Defendant Ronald Crum are **DISMISSED, without prejudice**.

Dated this 21st Day of October, 2015.

*E. Richard Webber* (signature)

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE