UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL HUMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:14CV00073 ERW |
| | ) | |
| JAMES HURLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendant James Hurley, Terri Chenoweth, Daniel Wombles, Roxane Speagle, Timothy Wood, and Ronald Crum's Motion for Summary Judgement [ECF No. 70].

**I.    BACKGROUND**

Plaintiff Daniel Human ("Plaintiff") initiated this lawsuit by filing a complaint on July 3, 2014 [ECF No. 1]. On March 12, 2015, pro bono counsel was appointed [ECF No. 27]. On May 1, 2015, Plaintiff filed an amended complaint [ECF No. 33]. On February 3, 2016, Plaintiff filed his Second Amended Complaint ("Complaint") [ECF No. 59]. In this Complaint, Plaintiffs asserts two counts against Defendants James Hurley ("Hurley"), Terri Chenoweth ("Chenoweth"), Daniel Wombles ("Wombles"), Susan Kattleman ("Kattleman"), Timothy Truelove ("Truelove"), Stephen Burgett ("Burgett"), Roxane Speagle ("Speagle"), Timothy Wood ("Wood"), and Ronald Crum ("Crum"). In Count I, Plaintiff alleges Defendants conducted malicious and cruel acts intended to cause him physical and emotional pain and distress which deprived him of his constitutional rights to be secure in his person and free from the imposition of "cruel and unusual punishment." In Count II, Plaintiff alleges Defendants, individually and in

concert with each other, conducted sadistic and malicious actions meant to harm him, in conscious disregard of his constitutional right to have his medical restrictions recognized, with the intent to deprive Plaintiff of his constitutional right to adequate medical treatment for known risks to his health.

On August 30, 2016, Defendants Hurley, Chenoweth, Wombles, Kattleman, Truelove, Burgett, Speagle, Wood, and Crum filed this Motion for Summary Judgment [ECF No. 70]. Defendants seek summary judgment on both counts of Plaintiff's Complaint on the basis Plaintiff had not exhausted his administrative remedies with regard to any of his complaints in violation of the Prison Litigation Reform Act and Plaintiff cannot prove a genuine issue of material fact supporting any constitutional violation. Alternatively, Defendants assert qualified immunity prohibits the suit.

On October 18, 2016, Plaintiff filed a Motion to Voluntarily Dismiss Defendants Truelove, Kattelman, and Burgette, which the Court granted.

A. *Uncontroverted Facts*

Plaintiff is an inmate at Northeast Correctional Center ("NECC") in Bowling Green, Missouri, and has been since November 12, 2013. On March 13, 2014, Plaintiff was assigned to work on the "Captain's Crew" ("Crew"). On April 11, 2014, Dr. Deborah Harrell, APRN FNP-C, examined Plaintiff and issued work restrictions stating Plaintiff was restricted from "repetitive bending, stooping, or squatting" for work assignments. On April 26, 2014, when Plaintiff reported to the Crew and showed Defendant Chenoweth and Wombles his medical restriction, both of them told him to work.

On April 30, 2014, Plaintiff filed an Informal Resolution Request ("IRR") form asserting working on the Crew violated his medical restrictions. Prison officials did not respond to

Plaintiff's IRR within forty days and the form was marked "exceeding time limit" and "grievance given 6-23-14" according to the Missouri Department of Corrections ("MDOC") offender grievance procedure.

On June 24, 2014, Plaintiff filed an Offender Grievance regarding the Crew work. On July 3, 2014, Plaintiff filed his initial complaint, in this Court, alleging his work on the Crew violated his medical restrictions. On July 22, 2014, the Warden's office denied Plaintiff's Offender Grievance, because an investigation showed Plaintiff was told to work within those restrictions, and was told he could clean tables and benches. On August 23, 2014, prison authorities denied Plaintiff's appeal of the Offender's Grievance.

In December 2014, Plaintiff requested a cell move. Defendant Wood moved Plaintiff from a cell in 4 House to a cell in 5 House containing two offenders who smoke, which allegedly bothered Plaintiff's allergies. On December 11, 2014, Plaintiff filed an Offender Grievance Appeal, marked "Reprisal," regarding the cell move. In January 2015, the Reprisal Offender Grievance Appeal was denied because no evidence of reprisal was found. The appeal was returned to Plaintiff and a normal grievance process was suggested to Plaintiff, according to MDOC Offender Grievance Procedure. A normal grievance process begins by filing an IRR but Plaintiff did not file any IRR regarding a retaliatory cell move.

In February 2015, Defendant Crum, a sergeant currently in charge of Plaintiff's housing unit, assigned Plaintiff to clean showers which required Plaintiff to climb stairs. On February 13, 2015, Plaintiff filed an IRR stating the shower cleaning work violates his medical work restrictions. The IRR was denied on the basis his job duties were within his medical restrictions. On March 5, 2015, Plaintiff filed an Offender Grievance regarding the shower cleaning. On March 9, 2015, Hurley informed Plaintiff, Crum was aware of his medical restrictions in his

Warden's response to Plaintiff's Offender Grievance. On March 27, 2015, Plaintiff filed an Offender Grievance Appeal regarding cleaning the showers on the second floor. On May 27, 2015, prison officials denied the appeal.

In May 2015, Crum assigned Plaintiff to front yard mow crew. Plaintiff did not push a lawn mower. Plaintiff did not file an IRR grieving an assignment to push a reel lawnmower.

**II.     STANDARD**

A court shall grant a motion for summary judgment only if the moving party shows "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the

allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing a genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

### III. DISCUSSION

Plaintiff, in both Count I and Count II, asserts claims under 42 U.S.C. § 1983, claiming Defendants violated Plaintiff's constitutional rights under the Eighth Amendment. Defendants assert Plaintiff's § 1983 claims against them fail because, *inter alia,* he did not exhaust his administrative remedies before filing suit.

    a. *§ 1983 Claims and the Prison Litigation Reform Act*

An inmate's § 1983 claim with respect to prison conditions may only proceed if the inmate has first exhausted all of his available intra-prison administrative remedies under the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a); *Jones v. Bock,* 549 U.S. 199, 211 (2007); *Leach v. Moore,* 240 Fed. App'x 732, 733 (8th Cir. 2007) (per curiam). The "failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. Instead, "the defendant has the burden to plead and to prove" a failure to exhaust. *Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir. 2005) (per curiam) (citation omitted). Therefore, Defendants bear the burden to plead and to prove Plaintiff did not follow all of the steps in the MDOC grievance procedure.

    *b. Exhaustion Standard*

"[It] is the prison's requirements… that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to decide whether a specific claim against a specific defendant was properly exhausted, the Court must look to the prison's grievance procedure. *Taylor v. Null*, No. 4:13–CV–1065–CEJ, 2015 WL 1006093, at *1 (E.D. Mo. Mar. 5, 2015)(citation omitted).

The MDOC has a uniform grievance procedure for all Missouri prisons, including NECC. The MDOC procedure consists of three stages. At the first stage, a prisoner presents his complaint by filing an IRR within fifteen days of the circumstances giving rise to the complaint. The IRR is then reviewed and a written response is given to the prisoner. At the second stage, a prisoner who is dissatisfied with the response to the IRR may file an Offender Grievance within seven days of the conclusion of the entire IRR review process. The grievance is then reviewed and a written response is provided to the prisoner. Finally, at the third stage, a prisoner, who is dissatisfied with the response to the grievance, may file an Offender Grievance Appeal within

seven days of the conclusion of the entire grievance review process. The appeal is then reviewed and a written response is provided to the prisoner. *Id.* at 2.

In this case, Plaintiff lists four incidents which allegedly violate his constitutional rights: (1) the Crew's work; (2) the cell move; (3) the shower cleaning; and (4) the lawn mower assignment. For the Crew's work incident, Plaintiff filed an IRR on April 30, 2014, to which prison officials did not respond within forty days and the form was marked "exceeding time limit" and "grievance given 6-23-14" according to MDOC offender grievance procedure. Plaintiff filed an Offender Grievance regarding the Crew work on June 24, 2014, which was subsequently denied. On August 23, 2014, prison authorities also denied Plaintiff's appeal of the Offender's Grievance. Plaintiff went through all three steps of the administrative remedies provided by MDOC and the Court concludes Plaintiff exhausted his administrative remedies for the Crew's work incident. However, the key issue for the Crew's work incident and the remainder of the incidents is not whether the exhaustion occurred, but when the exhaustion occurred.

  *c. Time of Exhaustion*

The key issue for this case is to determine when must exhaustion of Plaintiff's administrative remedies have occurred: before he files his suit, or before the Court rules on the pending motion? This question has been answered by the Eighth Circuit in *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2015). In *Johnson v. Jones*, at the time the inmate plaintiff filed his district court complaint, he had not yet exhausted all available administrative remedies, but by the time the district court ruled on the respective defendants' motion to dismiss based on each inmate's failure to exhaust, exhaustion had occurred. *Id.* at 626. The Eighth Circuit ruled the district court "must look to the time of filing, not the time the district court is rendering its

decision, to determine if exhaustion has occurred." *Id.* at 627. The Eighth Circuit did not reverse the district court's decision to deny the defendants' motion to dismiss in *Johnson v. Jones*, because, *inter alia*, it was the first panel to explicitly rule on the issue. The Eighth Circuit elaborates "should the district court be faced with identical circumstances in the future, dismissal is required under section 1997e(a)." *Id.* at 628.

Thus, the test for Defendants' exhaustion defense becomes: (1) whether Plaintiff exhausted his administrative remedies, and (2) if he did, whether Plaintiff exhausted his administrative remedies before he filed suit in this Court on July 3, 2014. Failure to answer affirmatively to either of the questions will result in dismissal of Plaintiff's claims for failure to exhaust.

For Plaintiff's Crew work incident, he did not receive the decision on his Offender's Grievance Appeal until August 23, 2014, more than one month after he filed suit in this Court. Thus, even though Plaintiff exhausted his administrative remedies for the Crew work incident, he failed to do so before the time of filing suit. Accordingly, Plaintiff failed to meet the exhaustion requirement under the PLRA and his claims against Defendants for the Crew work incident will be dismissed. Plaintiff's § 1983 claims based on the other three incidents fail, because the incidents occurred after Plaintiff filed suit on July 3, 2014. Therefore, he could not have exhausted his remedies for those incidents before filing this lawsuit.

Plaintiff argues inmates cannot be held to the exhaustion requirement of PLRA when prison officials have prevented exhaustion of the available administrative remedies. Within the Eighth Circuit, inmates are only excused from complying with an institution's grievance procedures when (1) prison officials have prevented them from utilizing prison grievance procedures; or (2) when officials themselves have failed to comply with the procedures. *See*

*Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005). Here, for his grievance about the Crew's work incident, Plaintiff's efforts to further utilize the grievance procedure were not prevented by prison officials. MDOC Procedure Manual stipulates when prison officials do not respond in the time allocated, grievant is allowed to move to the next stage of the process by notifying the grievance officer. In fact, when Plaintiff did not receive a response to his IRR, he did, pursuant to the MDOC Procedure Manual, move to the next stage by filing an Offender's Grievance, followed by an Offender's Grievance Appeal. Prison officials' failure to respond to the IRR within forty days does not constitute a failure to comply with procedures because the administrative remedies were still available for Plaintiffs even if prison officials did not respond. This case is distinguished from *Foulk v. Charrier,* 262 F.3d 687 (8th Cir. 2001), because in *Foulk*, the Eighth Circuit found for the prisoner, when prison officials' failure to comply resulted in no further remedies available for the prisoner. *See Foulk,* 262 F.3d at 698 (holding the district court lacked a sufficient factual basis on which to find plaintiff failed to exhaust his administrative remedies when the failure to comply by prison officials precluded any further grievance procedures).

Next, Plaintiff argues when the "reprisal" complaint for retaliatory conduct for the cell move incident was denied in January 2015, the administrative remedies were exhausted. Again, the exhaustion occurred, if at all, after the date Plaintiff filed suit in this Court, which is in July 2014. Therefore, Plaintiff's claims against Defendants for the cell move incident will be dismissed

Plaintiff further argues the shower cleaning incident and the lawn mower assignment are Defendants' continuing violation of Plaintiff's medical restrictions from the Crew work incident and therefore, Plaintiff need not file separate complaints for those two incidents. The Court has

already concluded Plaintiff has not exhausted the administrative remedies for the Crew work incident before filing suit. Thus, Plaintiff did not exhaust administrative remedies for the shower cleaning incident and the lawn mower assignment, even if the two incidents can relate back to the Crew work incident's grievance process. Therefore, Plaintiff's claims against Defendants for the shower cleaning incident and lawn mower assignment will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Defendant Hurley, Chenoweth, Wombles, Speagle, Wood, and Crum's Motion for Summary Judgement [ECF No. 70] is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Defendant James Hurley, Terri Chenoweth, Daniel Wombles, Roxane Speagle, Timothy Wood, and Ronald Crum are **DISMISSED, without prejudice**.

Dated this 6th Day of December, 2016

*E. Richard Webber* (signature)

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE